**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DUNMIRE,       )    | |
|         Plaintiff      )     | C.A. No. 05-64 Erie |
|                            )     | |
|         v.              )     | **District Judge McLaughlin** |
|                            )     | **Magistrate Judge Baxter** |
| CAPT. DEPASQUAL, et al.,   )   | |
|         Defendants.    )     | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss [Document # 15] be granted.

**II.     REPORT**

   **A.     Relevant Procedural and Factual History**

On February 23, 2005, Plaintiff John Dunmire, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Captain DePasqual, a corrections officer at SCI-Albion; Pennsylvania Department of Corrections; Marilyn S. Brooks, Superintendent at SCI-Albion; Major Giddens, a corrections officer at SCI-Albion; and Michael Harlow, Deputy Superintendent at SCI-Albion.

Plaintiff claims that Defendants violated his Eighth Amendment right against cruel and unusual punishment when, on September 14, 2004, he was forced to submit to a strip search in SCI-Albion's recreation yard weight pit "in plain view of female corrections officers as well [as] all inmates in the east yard ... and inmates looking out their windows on housing units D and C." (See Document 14, Amended Complaint, Sections III and IV.C). As relief, Plaintiff seeks "punitive, exemplary and compensatory damages." (See Document # 14, Amended Complaint,

Section VI).

Defendants have filed a motion to dismiss Plaintiff's claims based on: (i) Plaintiff's failure to exhaust his administrative remedies; (ii) Plaintiff's failure to state a claim upon which relief may be granted; and (iii) the Eleventh Amendment's bar against bringing suit against the Pennsylvania Department of Corrections. [Document # 15]. Plaintiff has filed a response to Defendants' motion to dismiss [Document # 18] arguing that it was not necessary for him to exhaust his administrative remedies because the initial response received from SCI-Albion's grievance officer acknowledged that "a mistake was made" with regard to the strip search. Plaintiff also argues that his claims are actionable under both the Fourth and Eighth Amendments; however, he has voluntarily withdrawn his claims against the Pennsylvania Department of Corrections in recognition of the Eleventh Amendment's immunity provisions.[1] (See Document # 18 at ¶ 2). Plaintiff's claims against the remaining Defendants are now ripe for consideration.

### B.     Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). Rule 8(a) of

---

[1] Although Plaintiff's Amended Complaint does not specifically cite a violation of the Fourth Amendment, *pro se* pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C.     The Exhaustion Requirement and Procedural Default

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

3

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997). However, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

In addition, the United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. June 18, 2004).[2] The Circuit explained:

---

[2] There is an emerging split of authority among the Circuits on this issue. Compare Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

4

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### D.     Exhaustion and Procedural Default applied

In order to exhaust all of the administrative remedies within the Pennsylvania Department of Correction's ("D.O.C.") grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the D.O.C.  inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate.  The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer.  The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4).  If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the D.O.C. Secretary's Office of Inmate Grievances and Appeals ("D.O.C. Secretary"). DC-ADM 804 VI(C)(1).

Defendants argue that Plaintiff never exhausted his administrative remedies in

accordance with the PLRA's requirements. Plaintiff admits that he did not pursue any administrative remedies beyond his receipt of the Initial Review Response to his grievance, which disclosed:

> A mistake was made and we offer our apology for any inconvenience that may have been caused by the mistake. As soon as the issue was brought to the attention of senior staff, corrective action was taken to ensure an incident like this does not happen in the future.
>
> We are conducting a fact-finding to pinpoint where communication broke down and the decision was made to conduct the searches in the weight pit.

(See Attachment to Document # 15 at p. 5). Nonetheless, Plaintiff contends that "this response from the defendants to plaintiff's grievance nullified any reason for plaintiff to appeal this grievance because defendants admitted their conduct was wrong." (See Document # 18 at ¶ 1).

As cited earlier, the Third Circuit has steadfastly recognized that there is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78. Most recently, in Williamson v. Wexford Health Sources, Inc., 131 Fed. Appx. 888 (3d Cir. 2005), the Third Circuit upheld the dismissal of an action because of the plaintiff's failure to exhaust his administrative remedies, despite the plaintiff's contention that further administrative exhaustion would have been futile because he had "received all the medical treatment he requested" in his grievance. 131 Fed. Appx. at 890, citing Nyhuis, 204 F.3d at 69 n. 4, 71.

Here, Plaintiff attempts to argue that further administrative exhaustion would have been futile because Defendants already admitted their conduct was wrong in the initial response to his grievance. This argument must fail in light of the foregoing precedent. Moreover, Plaintiff now seeks monetary damages for the conduct he originally challenged in his grievance. In order to comply with the administrative exhaustion requirement, Plaintiff needed to present his claims for monetary damages at all levels of the administrative appeal process before filing suit in this case. See Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000)(holding that inmate was required to exhaust all administrative remedies available to him prior to filing action with the federal

6

court, "even though the Commonwealth of Pennsylvania's inmate grievance process could not provide [him] with the money damages he sought"). Plaintiff failed to do this. Moreover, because any attempt to file an administrative appeal now would be time-barred, Plaintiff's claims are procedurally defaulted. As a result, this case should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion to dismiss [Document # 15] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
Chief U.S. Magistrate Judge

Dated: September 22, 2005

cc:    The Honorable Sean J. McLaughlin  
         United States District Judge