**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DUNMIRE,** | ) | |
| **Plaintiff** | ) | **C.A. No. 05-64 Erie** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **CAPT. DEPASQUAL, et al.,** | ) | |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Plaintiff's Motion for Summary Judgment [Document # 24]  be denied, and Defendants' Motion for Judgment on the Pleadings [Document # 27] be granted.

**II.      REPORT**

**A.      Relevant Procedural and Factual History**

On February 23, 2005, Plaintiff John Dunmire, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are: Captain DePasqual, a corrections officer at SCI-Albion ("DePasqual"); Pennsylvania Department of Corrections ("PaDOC"); Marilyn S. Brooks, Superintendent at SCI-Albion ("Brooks"); Major Giddens, a corrections officer at SCI-Albion ("Giddens"); and Michael Harlow, Deputy Superintendent at SCI-Albion ("Harlow").[1]

---

[1]

In his response to Defendants' previous motion to dismiss, Plaintiff conceded that his claims against Defendant PaDOC would be barred by the Eleventh Amendment and, thus, moved to withdraw the PaDOC as a Defendant in this case. (Document # 18, at ¶ 2).

Plaintiff claims that Defendants violated his Fourth, Eighth and Fourteenth Amendment rights when, on September 14, 2004, he was forced to submit to a strip search in SCI-Albion's recreation yard weight pit "in plain view of female corrections officers as well [as] all inmates in the east yard ... and inmates looking out their windows on housing units D and C." (See Document 14, Amended Complaint, Sections III and IV.C).[2]  As relief, Plaintiff seeks "punitive, exemplary and compensatory damages." (See Document # 14, Amended Complaint, Section VI).

On August 26, 2005, Defendants filed a motion to dismiss Plaintiff's claims based, in part, on Plaintiff's failure to exhaust his administrative remedies. [Document # 15].  By Report and Recommendation ("R&R") issued on September 23, 2005, this Court recommended that Defendants' motion to dismiss be granted and this case dismissed for Plaintiff's failure to exhaust his administrative remedies. [Document # 20].  In particular, this Court noted that Plaintiff failed to pursue any further appeals of his grievance beyond his receipt of Defendants' initial review response, which acknowledged that a "mistake was made" with regard to the strip search at issue and that "corrective action was taken to ensure an incident like this does not happen in the future." (Document # 15, Exhibit 1, Attachment B).

Plaintiff filed objections to this Court's R&R, asserting for the first time that Defendants prevented him from completing the administrative process by failing to properly respond to his grievance and, therefore, his failure to exhaust administrative remedies should be excused. [Document # 21].  In consideration of Plaintiff's objections, District Judge Sean J. McLaughlin issued an Order declining to adopt this Court's R&R and denying Defendants' motion to

---

[2]

Plaintiff's Amended Complaint does not specifically cite a violation of the Fourth and Fourteenth Amendments; however, Plaintiff argues in his response to Defendants' motion for summary judgment that "the strip search was unreasonable and violative of his rights to due process and the 4th and 8th Amendments." (Document # 29, at p. 10). As *pro se* pleadings are to be construed liberally, this Court will recognize Plaintiff's claim as arising under the Fourth and Fourteenth Amendments, as well as the Eighth Amendment.  Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

dismiss based upon his finding that there is a genuine issue of material fact as to whether Plaintiff was prevented from completing the grievance process. [Document # 23].

On November 1, 2005, Plaintiff filed a Motion for Summary Judgment [Document # 24] claiming that he is entitled to judgment in his favor based upon Defendants' admission in their initial response to his grievance that the strip search at issue did, in fact, occur and that it was a "mistake." [Document # 24]. On the same date, Defendants filed an Answer to Plaintiff's Amended Complaint asserting several defenses to Plaintiff's claims, including Plaintiff's failure to exhaust his administrative remedies. [Document # 26]. In conjunction with their Answer, Defendants also filed Motion for Judgment on the Pleadings seeking entry of judgment in their favor. [Document # 27]. Plaintiff has since filed a response to Defendants' motion for judgment on the pleadings. [Document # 29]. As a result, this matter is now ripe for consideration.

**B.      Standard of Review**

**1.      Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides as follows:

> Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). A Rule 12(c) motion may not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law, ... view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Hayes v. Community Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991), quoting Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980), quoting 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure, § 1386, at 690 (1969). A court may not dismiss a

3

complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### 2.        Summary Judgment

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986);

Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3.     *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared

5

by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith
v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections,
949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe
all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d
Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P.
12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir.
1990)(same).

### C.      The Exhaustion Requirement and Procedural Default

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of
> this title ... by a prisoner confined in any jail, prisons, or other correctional
> facility until such administrative remedies as are available are exhausted.

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate
suits regarding prison life, including those that involve general circumstances as well as
particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton,
306 F.3d 1347  (3d Cir. 2002) (for history of exhaustion requirement). Administrative
exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S.
140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to
exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL
2356136 (Unpublished Opinion) (10th Cir. May 8, 1997). However, a plaintiff's failure to
exhaust his administrative remedies does not deprive the district court of subject matter
jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear
majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply
with the section would deprive federal courts of subject matter jurisdiction.").

The exhaustion requirement is not a technicality, rather it is federal law which federal

6

district courts are required to follow.  Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

In addition, the United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context.  Spruill v. Gillis,  372 F.3d 218, 228-229 (3d Cir. June 18, 2004).[3]  The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id.  Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.


### D.    Exhaustion and Procedural Default applied

In order to exhaust all of the administrative remedies within the Pennsylvania Department of Correction's ("D.O.C.") grievance system, a grievance must be appealed through

---

[3]

There is an emerging split of authority among the Circuits on this issue.  Compare  Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and  Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

all administrative levels of appeal at the inmate's institution and the D.O.C.  inmate-initiated

grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM

804"), which is included as part of the inmate handbook distributed to each inmate.  The first

step in the grievance process is for the inmate to file a claim with the institution's grievance

officer.  The grievance officer will investigate a grievance and provide the inmate with an Initial

Review Response, which includes "a brief rationale, summarizing the conclusions and any

action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804

VI(B)(4).  If the inmate is not satisfied with the Initial Review Response, there are two levels of

appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the

Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal

to the D.O.C. Secretary's Office of Inmate Grievances and Appeals ("D.O.C. Secretary").  DC-

ADM 804 VI(C)(1).

Initially, Defendants argue that Defendants Brooks, Harlow and Giddens were not

named in Plaintiff's grievance and, thus, Plaintiff has failed to exhaust his administrative

remedies with regard to his claims against these Defendants.  Indeed, the only Defendant

identified in Plaintiff's grievance is Defendant DePasqual. (See, Document # 15, Exhibit 1 at p.

3).  In Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004), the Third Circuit Court of Appeals

held that a Pennsylvania inmate's failure to properly identify a defendant in the grievance

forming the basis of the inmate's subsequent lawsuit constituted a failure to exhaust his

administrative remedies as to such defendant.  See also Jones v. Stickman, 2005 WL 3475762 at

*3 (W.D.Pa. Dec. 19, 2005)(granting summary judgment in favor of defendants who were not

named in plaintiff's grievance).  As a result, Defendants Brooks, Harlow, and Giddens should

be dismissed from this case based on Plaintiff's failure to exhaust his administrative remedies

against such Defendants.

Furthermore, the crux of Plaintiff's Amended Complaint is that he was allegedly strip

searched "in full view of female officers and other inmates." (Document # 14, Amended

8

Complaint, at Section IV.C).  However, Plaintiff's grievance made no mention of being searched in front of female officers.  Plaintiff merely claimed that "the strip search took place in an area that could be easily be viewed by inmates looking out their windows on both D & C pods and was done in full view of all inmates in the East yard who were also subjugated [sic] to this search." (Document # 15, Exhibit 1 at p. 3).  Thus, Plaintiff has not even taken the first step in the administrative process with regard to his claim that he was strip searched in full view of female corrections officers.  Since this claim is now time barred, Plaintiff has procedurally defaulted on the claim and it should be dismissed for Plaintiff's failure to exhaust administrative remedies.

With regard to Plaintiff's remaining claim that he was strip-searched in front of other male inmates, this Court previously recommended dismissal based upon Plaintiff's admitted failure to exhaust his administrative remedies. (Document # 20, Report and Recommendation, at p. 6).  In particular, this Court rejected Plaintiff's argument that further administrative exhaustion would have been futile because Defendants already admitted their conduct was "a mistake" in the initial response to his grievance, because the Third Circuit does not recognize futility as an excuse for exhaustion.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

Plaintiff filed Objections to this Court's R&R, arguing for the first time that "he was prevented from completing the grievance process by defendants who failed to properly respond to his grievance and therefore plaintiff had no available administrative remedy." (Document # 21 at ¶ 4).  In consideration of this argument, District Judge Sean J. McLaughlin issued an Order declining to adopt this Court's R&R and denying Defendants' previous motion to dismiss, based upon his finding that there is a genuine issue of material fact as to whether "the state prison officials failed to comply with SCI-Albion's own grievance procedures." [Document # 23].  Upon revisiting this issue, this Court finds the exhaustion arguments raised by Plaintiff in his Objections to be disingenuous and wholly without merit.

9

Plaintiff argues that he received the initial response to his grievance without being "afforded an individual interview or afforded the chance to sign the grievance as resolved or unresolved as is apparent by the absence of plaintiff's signature on the grievance." [Document # 20]. However, this argument is nullified by Plaintiff's addendum to his objections, in which Plaintiff acknowledges that "although he was not given an individual interview or the opportunity to sign the grievance as resolved or unresolved, Plaintiff considered the grievance to be resolved ... since plaintiff believed that it was at the time resolved *he would not have filed a further appeal even if the defendants had properly responded to the grievance, interviewed plaintiff and given him the opportunity to sign the grievance as resolved*." (Document # 21 at ¶ 1). Plaintiff then went on to reiterate his original contention that was rejected by this Court: "Plaintiff avers that since he considered the grievance resolved there was no need to further appeal...." (Document # 21 at ¶ 2). Thus, it is quite apparent that Plaintiff continues to argue futility, which the Third Circuit does not recognize as an exception to the PLRA's exhaustion requirement, as this Court noted in its previous R&R. (Document # 20 at p. 6). See also Lyon v. Krol, 305 F.3d 806, 809 (8th Cir. 2002)("It does not matter ... that [plaintiff] may have subjectively believed that there was no point in his pursuing administrative remedies... § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available'").

Furthermore, if Plaintiff truly considered his grievance resolved by the Initial Review Response he received, he would not have brought the present action. Plaintiff may argue that he is now seeking monetary damages, which would be unavailable through an inmate grievance procedure; however, "§ 1997e(a) requires exhaustion of an administrative remedy even if that remedy cannot grant the type of relief sought by an inmate." Booth v. Churner, 532 U.S. 731, 734 (2001)(holding that a prisoner seeking only money damages under § 1983 was required to complete the prison administrative process, even though that process could not provide him with any monetary relief). Thus, such an argument would be unavailing.

Moreover, Defendants' alleged non-compliance with its own grievance procedures does not excuse Plaintiff from exhausting his administrative remedies.  Plaintiff attempts to argue that he was prevented from complying with the exhaustion requirements because he was not provided with an individual interview or given the opportunity to sign the grievance as resolved or unresolved; however, neither of these alleged deficiencies precluded him from appealing the initial response to the next level if he truly intended to do so.  DC-ADM 804 merely requires the Grievance Officer to provide a written response to the grieving inmate within ten working days of receipt of the grievance, which shall include "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issue(s) raised in the grievance." DC-ADM 804 VI(B)(1)(i).  This was done in this case. (Document # 15, Exhibit 1 at p. 4).  Noticeably absent from the DOC's grievance policy is any requirement that an initial interview be given or that the inmate be given the opportunity to sign the grievance as resolved or unresolved as a precursor to the inmate's ability to file an appeal.  In fact, the policy simply provides that "[a]n inmate may appeal an Initial Review decision ...  to the Facility Manager in writing, within five working days from the date of receipt by the inmate of the Initial review decision...."  DC-ADM 804 VI(C)(1)(b).

Simply stated, there was a grievance procedure available, Plaintiff was aware of it, and he chose not to follow the steps the procedure outlined to exhaust his administrative remedies before filing this case.  Because he is now time barred from exhausting his claims through the administrative process, this case should be dismissed.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Summary Judgment [Document # 24] be denied and Defendants' Motion for Judgment on the Pleadings [Document # 27] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule

72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


                                        S/Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        Chief U.S. Magistrate Judge


Dated:  February 7, 2006

cc:      The Honorable Sean J. McLaughlin
         United States District Judge

12